## 19410

Annie S. SMITH, Administratrix of the Estate of Ray E. Smith, Respondent-Appellant, v. James Robert WELLS and one 1964 Falcon, License No. D2194, Serial No. 4 H 160 153, Appellant-Respondent.

(188 S. E. (2d) 470)

*J. Kendall Few, Esq.,* of *Burns, McDonald, Bradford, Erwin & Few,* Greenwood, *for the Appellant-Respondent,*

*Judson F. Ayers, Jr., Esq.,* of *Watson & Ayers,* Greenwood, *for Respondent-Appellant,*

*J. Kendall Few, Esq.,* of *Burns, McDonald, Bradford, Erwin, & Few,* Greenwood, *for the Appellant-Respondent,*

May 3, 1972.

LEWIS, Justice.

The sole question to be decided in this appeal is as follows: In an action brought for the benefit of the widow and children of a deceased, as statutory beneficiaries under the South Carolina wrongful death statute, is evidence of the remarriage of the widow admissible?

Ray E. Smith was killed when the motorcycle he was riding collided with an automobile driven by the defendant. He left surviving him his widow, twenty-four years of age, and two infant daughters, ages two and five. This action was brought pursuant to the South Carolina wrongful death statute (Section 10-1951 et seq., 1962 Code of Laws) for the benefit of the surviving wife and children, and resulted in a verdict for plaintiff in the amount of $22,500.00, actual damages.

During the trial of the case, defendant was permitted, over the objection of plaintiff, to elicit testimony from the wife of the deceased to the effect that she had remarried slightly less than six (6) months after the decedent's death. The trial judge had earlier in the trial refused to permit plaintiff to swear the widow, as a witness, under her name before she remarried. He did however exclude testimony as to the earnings of her second husband. In their arguments to the jury, both counsel discussed the effect that the remarriage should properly have upon any verdict rendered;

but no specific instructions thereabout were given by the court to the jury.

Upon the return of the verdict, plaintiff moved for a new trial upon several grounds. Included was the ground that the trial judge erred in admitting evidence showing that the wife of the deceased had remarried. The motion for a new trial was granted upon the foregoing ground, without consideration of the others; and defendant has appealed. While plaintiff has preserved the additional grounds urged in the lower court for a new trial, we find it necessary to consider only the question of whether it was error to admit testimony relative to the widow's remarriage.

Code Section 10-1954 provides that, in every action for wrongful death, "the jury may give such damages, . . ., as they may think proportioned to the injury resulting from such death to the parties respectively for whom and for whose benefit such action shall be brought."

We have held that, in determining the damages recoverable under the wrongful death statute, the question is not one of the value of the human life lost, but is rather the damages sustained by the beneficiaries from the death. *Zorn v. Crawford,* 252 S. C. 127, 165 S. E. (2d) 640.

> The beneficiaries are entitled to recover all damages, present and prospective, which are naturally the proximate consequence of the wrongful act, including: (1) pecuniary loss, (2) mental shock and suffering, (3) wounded feelings, (4) grief and sorrow, (5) loss of companionship, and (6) deprivation of the use and comfort of the intestate's society, including the loss of his experience, knowledge, and judgment in managing the affairs of himself and of his beneficiaries. *Mishoe v. Atlantic Coast Line R. Co.,* 186 S. C. 402, 197 S. E. 97.

We have also held that only such future or prospective damages may be recovered as the evidence renders it reasonably certain will of necessity result from the allged injury.

Appellant contends that, under the foregoing interpretation of our wrongful death statute, the determination of the amount of damages suffered by the beneficiaries "would depend in part upon the facts and circumstances occurring after the death and those which it is reasonably certain will of necessity occur in the future." It is then argued that, while the fact of remarriage would not necessarily reduce the actual pecuniary loss to the beneficiaries, it would tend to establish the nature, character or extent of other elements of recoverable damages such as mental shock and suffering, wounded feelings, grief, sorrow, loss of companionship, and deprivation of society.

We think that the trial judge was correct in holding that the remarriage of the widow did not affect the damages recoverable by the beneficiaries for the wrongful death of the husband, and that evidence of the fact of remarriage was inadmissible. This is in accord with the rule adopted by the majority of American jurisdictions which have considered the question. Anno. 87 A.L.R. (2d) 252; 22 Am. Jur. (2d), Death, Section 164; 25A C.J.S. Death § 114, p. 961; Speiser, Recover for Wrongful Death, Section 6:12.

While testimony of the remarriage of the widow is rejected by the decisions upon several grounds, we think the soundest reason rests upon policy. These authorities point out that such testimony would involve an inquiry into the relative merits of the two husbands, which could only be determined by a comparision of their prospective earnings, contributions, services, society, and companionship. The remarriage was occasioned by the wrongful death of the first husband, and the probable effect of the remarriage upon such elements of damage as grief and sorrow, wounded feelings, and mental shock would involve an inquiry into all of the surroundings facts and circumstances which may have hastened the choosing of another mate. Such testimony is too speculative to form any valid standard by which to determine the damages sustained by the widow.

Neither is the fact of the remarriage of the mother relevant for the purpose of mitigating the damages recoverable by the children. The second husband is not legally responsible for their support; and the extent, if any, his addition to the family would mitigate the loss caused by the death of the natural father would require resort to pure speculation.

The assessment of the intangible elements of damage which will of reasonable necssity result in the future to the beneficiaries is, at best, most difficult. The highly speculative inquiry into the prospective value of the second marriage would not contribute to the certainty of the ultimate determination of the damages, and could only serve to inject considerations which would confuse the issues.

Judgment affirmed.

Moss, C. J., and BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.